UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRYAN K. BARNES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4: 22 CV 766 SPM ) |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff  Bryan K. Barnes for Disability Insurance Benefits (DIB) under Title II of the Act.  The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the final decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff was born on August 10, 1982, and was 37 years old on his October 18, 2019 amended alleged onset date.  (Tr. 28, 205-06.)  He protectively filed his application for DIB on December 31, 2020, alleging disability due to degenerative disc disease, osteoarthritis, knee pain from cartilage disease, high blood pressure, kidney stones, autoimmune issues, mobility issues, anxiety, and posttraumatic stress disorder (PTSD). (Tr. 233, 248.)  His claims were denied, and he requested a hearing before an administrative law judge (ALJ).  (Tr. 132-33.)

On March 2, 2022, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 12-29.) The Appeals Council denied review. (Tr. 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## II. ADMINISTRATIVE RECORD

The Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. 8-1), Defendant's Response to Plaintiff's Statement of Uncontroverted Facts (Doc. 9-1), as well as Plaintiff's Response to Defendant's Additional Statement of Facts (Doc. 10-1). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the administrative hearing. The Court will discuss specific facts in detail where relevant to this appeal.

## III. DECISION OF THE ALJ

On March 2, 2022, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 12-29.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 18, 2019, his alleged amended onset date, through the date of the decision. At Step Two, the ALJ found plaintiff had the following severe impairments: PTSD, major depressive disorder, generalized anxiety disorder, attention deficit disorder, gout, osteoarthritis of the feet, pes planus, obesity, degenerative disc disease, and Osgood Schlatter's disease. (Tr. 14.) At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (Tr. 15.)

The ALJ determined that plaintiff had the RFC to perform "sedentary" work as defined under the regulations with the following limitations:

> [H]e can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He can occasionally balance, stoop, crouch, and crawl, but never kneel. He cannot operate foot controls. He can frequently handle and finger. He can have no exposure to unprotected heights and occasional exposure to hazardous machinery, extreme cold, and vibrations. He is able to learn, remember, and carry out simple routine tasks and use reason and judgment to carry out such tasks. He can use reason and judgment to complete tasks in a timely manner while ignoring or avoiding distractions with only gradual changes in job setting and duties. He is able to sustain ordinary routine and regular attendance without needing more than the standard number of breaks or rest periods. He can have only occasional interactions with supervisors, coworkers, and the general public.

(Tr. 18.) The ALJ found that plaintiff could not perform his past relevant work. Relying on vocational expert (VE) testimony, the ALJ concluded there were jobs plaintiff could perform such as lens inserter, toy stuffer, and bonder. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 28-29.)

## IV.  STANDARD OF REVIEW

In reviewing the Commissioner's denial of an application for disability insurance benefits, the Court determines whether the decision complies with the relevant legal requirements and is supported by substantial evidence in the record. *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The review considers not only the record for the existence of substantial evidence in support of the Commissioner's decision. It also takes into

account whatever in the record fairly detracts from that decision. *Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir. 1998). We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pates-Fires,* 564 F.3d at 942.

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to do so. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the

Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating five medical opinions, those of licensed clinical psychologist Christina A. Ross, Psy.D.; non-examining state agency consultants, Marsha Toll, Psy.D., James Morgan, Ph.D.; consultative examiner Thomas Spencer, Psy.D.; and treating provider Jay L. Liss, M.D. Defendant responds that the ALJ properly evaluated the medical opinions and findings under the new regulations. This court disagrees.

**Medical Opinion Evidence**

Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c. When considering medical opinions and prior administrative medical findings, ALJs no longer defer or give any specific evidentiary weight to an applicant's medical sources, but instead evaluate their persuasiveness, 20 C.F.R. § 404.1520c(a).

The new rules provide that ALJs evaluate all medical opinions and findings using the factors delineated in the new regulations. Supportability and consistency are the most important factors, and their application must be explained. Other factors which "will be considered" and

- 5 -

about which adjudicators "may but are not required to explain" are the medical source's "treatment relationship" with the claimant, including the length, frequency, purpose and extent of the treating relationship, and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the Administration's disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(b), (c) (2017).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(3).

**Licensed Clinical Psychologist - Christina Ross, Psy.D.**

On November 6, 2019, plaintiff was seen at the VA by licensed clinical psychologist Christina Ross, Psy.D., at the VA for evaluation of his PTSD as part of his application for benefits with the VA. (Tr. 400-10.) Plaintiff reported he lived with his daughter, age 16, and was in an on-again-off-again, two-and-a-half-year relationship with his girlfriend. He had a good relationship with his family, and his daughter often went to visit his parents on the weekend. He reported having few friends due to trust issues but later stated that he went out with friends most weekends. He also stated that he often would lay in bed and text with his girlfriend or get on Facebook. (Tr. 402-03.)

Dr. Ross noted plaintiff served in the Army from May 2003 to January 2007. Since that time plaintiff reported that he experienced recurrent dreams where he described he was "fighting" with "things happening to people" and "being back in Iraq." Ross noted plaintiff experienced several PTSD symptoms, including recurrent intrusive thoughts and distressing memories, efforts to avoid triggering feelings, and irritable behavior and angry outbursts, among others. Plaintiff had received a DWI in July 2018 and reported that some bars have asked him not to return because he had gotten into fights in those establishments. He last used cocaine a year prior to Dr. Ross's evaluation. (Tr. 404-08.)

On examination, plaintiff showed appropriate hygiene and grooming, appeared his stated age, and presented as a "pleasant and agreeable individual." (Tr. 408.) His mood was anxious. He showed good attention and concentration as evidenced by his ability to follow interview questions and provide appropriate answers. His speech was normal and eye contact appropriate. He exhibited good insight into his symptoms and the impact they have on his day-to-day functioning. Dr. Ross found plaintiff's judgment was intact, and he was competent to manage his own finances. Dr. Ross diagnosed PTSD and provided a service-connected disability rating. (Tr. 408-09.) As to plaintiff's functional limitations, Dr. Ross concluded plaintiff experienced "[o]ccupational and social impairments with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactory. (Tr. 400.)

In her decision, the ALJ concluded Dr. Ross's opinion was "somewhat persuasive." (Tr. 26.) The ALJ stated "the medical evidence is *consistent* with limitations in social functioning and

concentration consistent with the residual functional capacity. Their evaluation of the claimant *supports* the assessment, noting difficulties with anger that reportedly affected his prior job status. (Tr. 26) (emphasis added).

Plaintiff argues the ALJ's one-sentence conclusion did not adequately address Dr. Ross's opinion. He contends the ALJ failed to assess Dr. Ross's opinion as an ordinary doctor's assessment of plaintiff's mental functioning. He argues the ALJ failed to satisfy the new regulations, which require the ALJ to explain how the supportability and consistency factors for a medical source's opinion were considered. He asserts it is not clear from the decision which parts of Dr. Ross's opinion the ALJ credited, and which parts she rejected. He argues the ALJ failed to reconcile Dr. Ross's assessment with the RFC.

Defendant Commissioner counters that the ALJ's decision as a whole supports his conclusion that Dr. Ross's opinion was somewhat persuasive. The Commissioner also notes that pursuant to the new regulations, other government agency disability determinations are neither inherently valuable or persuasive as they are not based on the rules applicable to the Social Security disability program.

This court concludes that the ALJ's single sentence that "[t]he medical evidence is consistent… with the [RFC]," did not adequately address Dr. Ross's opinion. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (although the ALJ's explanation need not be exhaustive, boilerplate or "blanket" statements will not do.). The regulations require that the ALJ articulate findings regarding the "supportability" and "consistency" of each medical opinion, but in this case, the ALJ addressed neither factor. Although the ALJ used the term "consistent," in her brief

- 8 -

discussion of Dr. Ross's opinion, it is not clear whether she was using it in reference to Dr. Ross's opinion. Rather, the ALJ found the medical evidence to be "consistent" with her assessed RFC. (Tr. 26.) *Cf. Post v. Kijakazi*, No. 4:20-CV-315 RLW, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (remand where the ALJ only "cursorily mentioned the 'consistency' factor but failed to address 'supportability' whatsoever…."); *Berry v. Kijakazi,* 2021 WL 4459699, at *8 (E.D. Mo. Sept. 29, 2021) (remand where the ALJ failed to consider the supportability of a medical opinion).

Moreover, it is not clear from the ALJ's decision which part of Dr. Ross's opinion the ALJ credited and which part she rejected. Although the ALJ concluded that Dr. Ross's opinion was "somewhat persuasive," nothing in the ALJ's decision explained what was persuasive or how the persuasive part of the opinion was incorporated into the RFC. *Cf. Ferguson v. Saul*, 2021 WL 3215097, at *2 (W.D. Mo. July 29, 2021) ("[r]emand is required because, after finding the opinion 'somewhat persuasive,' the ALJ did not explain how he incorporated these limitations into the RFC or provide reasons for discounting the limitations… as required by SSR 96-8p.").

Accordingly, this court concludes remand is required for the ALJ properly consider Dr. Ross's opinion according to the regulations and reconcile her assessment with the RFC.

**State Agency Consultants - Marsha Toll, Psy.D. and James Morgan, Ph.D.**

On July 28, 2021, state agency consultant Marsha Toll, Psy.D. evaluated plaintiff's mental functioning. (Tr. 81-86.) Dr. Toll found moderate limitations in all areas of mental functioning except for adapting and managing himself, where she found mild limitations. (Tr. 81.) She discussed the medical evidence in detail. She noted that plaintiff had a restricted affect but otherwise generally normal mental status examinations. Dr. Toll opined that plaintiff could

- 9 -

"reasonably be limited to simple, repetitive tasks away from the public." (Tr. 82.)  Dr. Toll opined that plaintiff would be moderately limited to understanding and remembering simple instructions. (Tr. 85.)  She believed he could "understand, remember, and carry out simple and mildly complex instructions, and make commensurate work-related decisions."  He could sustain concentration, persistence, and pace on tasks at that level.  With respect to social interactions, he could relate acceptably to others at a basic level but would be best suited for a job with moderately limited social demands.  Finally, he could adapt to normal changes in a basic work routine.  (Tr. 86.)

On September 22, 2021, James Morgan, Ph.D., evaluated plaintiff's mental functioning on reconsideration and affirmed Dr. Toll's opinion.  (Tr.  95-101.)

The ALJ considered the prior administrative medical findings of Drs. Toll and Morgan and found their opinions persuasive.  (Tr. 25, 81-83, 94-96.)  The ALJ explained:

> They are *consistent* with the medical evidence, which showed generally normal mental status examinations with complaints of forgetfulness, poor concentration, anger, and irritability (Exhibit B8F). The evidence supports no more than moderate limitations in functioning given his ability to drive, care for his daughter and pick up his stepchildren, shop with his wife, and attend group therapy sessions. Their opinions are *supportable by* their review of the medical evidence. Dr. Toll noted a restricted affect but otherwise unremarkable mental status examinations. Dr. Morgan noted poor coping skills and group therapy, which he completed without documented personal conflict.

(Tr. 25) (emphasis added).

Plaintiff argues that despite finding the doctors' opinions persuasive, the ALJ failed to explain why she omitted their opinion that plaintiff should work "away from the public" from her RFC.  Plaintiff notes that while the ALJ's assessed RFC accounts for some degree of social limitations, specifically, limiting plaintiff to "occasional interactions… with the general public,"

under the regulations the term "occasional" is defined as an activity or condition that occurs at least once up to one-third of the workday. POMS DI 25001.001(53). Plaintiff complains that the ALJ failed to resolve this inconsistency. Citing the hypothetical questions posed to the vocational expert, he argues the ALJ's failure to reconcile the opinions of Drs. Toll and Morgan with the RFC was harmful because it is unclear from the record whether plaintiff was employable if he had been limited to working "away from the public." He argues the VE's testimony casts doubt on whether "significant numbers" of jobs exist within the national economy for an individual who would need to work "away from the public."

Defendant counters that the ALJ is not required to adopt an opinion in full just because it is persuasive, nor is she required to explain every limitation in detail. Defendant argues the ALJ provide a very significant social limitation with only occasional interaction with supervisors, coworkers, and the general public. He further contends plaintiff's position regarding the limitation to be "away from the public" is a red herring because to be "away from the public" is very different from having no proximity to others. He argues there is no need to compare the vocational expert's response to this question because the ALJ did not so limit plaintiff and neither did Drs. Toll and Morgan.

This Court disagrees. Social Security Ruling 96-8p requires the ALJ to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved; if the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A., July 2, 1996)). If the ALJ fails to do so, this error is not harmless when the Court " 'cannot determine whether the ALJ would have reached

the same decision denying benefits, even if [s]he had followed the proper procedure.'" *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (*quoting Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003)).

While the RFC limits plaintiff to "only occasional interactions with supervisors, coworkers, and the general public," the additional limitation offered by Dr. Toll and Dr. Morgan that plaintiff should be "away from the public" was not included in the RFC, and the ALJ did not explain why she did not include this after she acknowledged both opinions were consistent with the record and persuasive. (Tr. 25.) Because the ALJ did not explain how any material inconsistencies or ambiguities in the evidence were considered and resolved, the court cannot determine whether the RFC correctly incorporated all of plaintiff's limitations. *See Lucus*, 960 F.3d at 1070. The error was not harmless because this limitation had a potentially significant impact on the outcome of the case.

At the hearing, the vocational expert was asked, among other things, whether an individual would be capable of working if they were unable to maintain social proximity with others. (Tr. 72-75.) The vocational expert testified that such a limitation would preclude all three of the jobs of lens inserter, toy stuffer, and bonder she had testified to earlier. (Tr. 73.) When asked about the availability of other work within the national economy, the vocational expert was able to identify a single job, small product assembler, that could be performed by an individual that was unable to maintain social proximity. (Tr. 74.) Although the vocational expert did not provide the specific number of jobs, she further explained that only about 40 percent of the "small product

- 12 -

assembler" positions within the national economy would be available to such an individual.  (Tr. 74.)

The vocational expert's testimony calls into question whether "significant numbers" of jobs exist within the national economy for an individual who would need to work "away from the public" because the record contains no vocational expert testimony addressing how the occupational base would be impacted by a limitation to work "away from the general public." Accordingly, remand is required for the ALJ to reconcile her finding that the opinions of Drs. Toll and Morgan were persuasive without explaining why she declined to adopt their conclusion that plaintiff should work "away from the public." *Cf. Cook v. Kijakazi*, 2022 WL 4117028, at *3 (W.D. Mo. Sept. 9, 2022) (After finding the medical opinions persuasive, the ALJ's failure to adopt all of the doctors' opined limitations in the RFC, or otherwise explain how inconsistencies were resolved, constitutes reversible error); *see also Shay v. Comm'r of Soc. Sec. Admin.*, 2020 WL 30326, at *2 (W.D. Mo. Jan. 2, 2020) ("remand is necessary for the ALJ to either incorporate these parts of the doctor's opinion into the RFC or explain why they should not be included.").

**Thomas J. Spencer, Psy.D.**

On June 10, 2021, Thomas J. Spencer, Psy.D. conducted a consultative psychological evaluation.  (Tr. 610-612.)  On examination, Dr. Spencer noted that plaintiff showed appropriate grooming and made fair eye contact with normal speech.  His insight and judgment were intact. Plaintiff presented with a restricted affect and described his mood as "[b]lah, unmotivated." Plaintiff was fully oriented, and his flow of thought was intact.  He demonstrated a "decent" working knowledge of social norms.  He was of average intelligence and cooperative during the

exam. Plaintiff denied a history of inpatient psychiatric treatment. Dr. Spencer diagnosed PTSD and opined that plaintiff demonstrated moderate impairment in his ability to learn, recall, and use information and to consistently stay on task and marked impairment in his ability to relate to and work with others on a consistent basis. (Tr. 612.)

In finding this opinion not persuasive, the ALJ explained:

> The objective findings in the mental status examination, as well as the longitudinal treatment history of the claimant, are *not consistent* with marked limitations in his social interactions. The claimant was cooperative with Dr. Spencer and had no issues participating in the evaluation, which is inconsistent with a marked limitation in the ability to interact with others. Further, though the claimant reported issues with anger and difficulties getting along with others in the workplace, the remainder of the medical evidence showed cooperative behavior with treatment providers and successful participation in group therapy without conflicts, which contradicts the marked limitations in social interaction. Dr. Spencer's opinions are not supportable. His examination showed but a snap-shot of his functioning. He based his opinions in large part on the claimant's subjective complaints of functional limitations which were not wholly consistent with his overall functioning and which were not supported by the objective findings in the medical evidence as a whole.

(Tr. 26) (emphasis added).

This court concludes the ALJ properly discussed the factors of supportability and consistency in finding this opinion not persuasive.

**Jay L. Liss, M.D.**

On March 3, 2021, treating psychiatrist Jay L. Liss, M.D., completed a Medical Source Statement-Mental. Dr. Liss assessed plaintiff's mental abilities across several domains, including his abilities to understand and remember, to maintain concentration, to interact socially, and to adapt to changes. Dr. Liss opined that plaintiff had marked limitations in his ability to understand and remember, and extreme limitations in the remaining areas. Dr. Liss believed that plaintiff

would be off task 25 percent or more of the workday and would likely be absent more than four days per month secondary to his mental impairments. (Tr. 353-54.)

In the decision, the ALJ concluded that Dr. Liss's opinions were "not persuasive" The ALJ explained:

> They are wholly inconsistent with his examinations. Dr. Liss's treatment records were sparse and contained no objective findings in supportive (sic) of his opinions indicating marked and extreme functional limitations. Further his opinions are not consistent with the mental status examinations conducted by other psychiatric providers, which were generally benign in their findings and inconsistent with more than moderate limitations in functioning. Dr. Liss's opinions are not supportable. He offered no specific objective evidence in support of his opinions but stated he based them on clinical findings and diagnoses without offering any further explanation or support.

(Tr. 26.)

This court concludes the ALJ properly discussed the factors of supportability and consistency in finding Dr. Liss's opinion not persuasive.

For all of the above reasons, the court concludes the decision of the ALJ is not supported by substantial evidence on the record as a whole.

## VI.  CONCLUSION

For all of the above reasons, the court concludes the decision of the ALJ is not supported by substantial evidence on the record as a whole. Therefore, pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

An appropriate Judgment is issued herewith.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of August, 2023.